UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
MARISOL QUINTANA,

                    Plaintiff,

       -against-

YOUNG BLOOMING, INC., *et al.*,

                    Defendants.
-----------------------------------------------------------------x

**MEMORANDUM AND ORDER**
12-CV-120 (DLI)(MDG)

**DORA L. IRIZARRY, United States District Judge:**

By Order dated March 31, 2014, adopting the Report and Recommendation of the Hon. Marilyn D. Go, U.S.M.J., dated March 11, 2014, the Court directed entry of default judgment in the amount of $111,991.11 against Defendants Gil Soo Cha ("Mr. Cha"), Mercedes Cha ("Ms. Cha"), and Yu Sun Cha (the "Individual Defendants"), and Young Blooming, Inc. ("Young Blooming") (collectively, "Defendants"). Presently before the Court is Defendants' motion to vacate the Default Judgment pursuant to Rules 55(c), 60(b)(1), and 60(b)(4) of the Federal Rules of Civil Procedure. (*See* Aff. of Hong K. Jung in Supp. of Defs.' Mot. to Vacate, dated April 7, 2015 ("Jung Aff."), Dkt. Entry No. 54-1.[1]) Plaintiff Marisol Quintana ("Plaintiff") opposes the motion. (*See* Aff. of Hugh G. Jasne in Opp'n to Defs.' Mot. to Vacate, dated Apr. 22, 2015 ("Jasne Aff."), Dkt. Entry No. 55). For the reasons set forth below, Defendants' motion is denied.

## BACKGROUND[2]

As alleged in the Complaint, Plaintiff was employed by Defendants as a manicurist at

---

[1] The docket reflects that Mr. Jung has appeared as counsel for Mr. and Ms. Cha. However, Mr. Jung's submissions in connection with the instant motion make clear that he has filed it on behalf of all Defendants.

[2] Only those facts pertinent to the instant motion are recounted herein. A more complete recitation of the facts can be found in the March 11, 2014 Report and Recommendation of Magistrate Judge Go. (Dkt. Entry No. 49).

two nail salons beginning in 2003. (*See* Compl. ¶¶ 5-10, Dkt. Entry No. 1.) In approximately September 2011, Plaintiff was terminated after complaining about her wages and working conditions. (*See* Aff. of Marisol Quintana ("Quintana Aff.") ¶¶ 10-13, 33-34, Dkt. Entry No. 33-2.) Thereafter, on January 10, 2012, Plaintiff commenced this action against Defendants, seeking to recover allegedly unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et. seq.*, and the New York Labor Law ("NYLL") §§ 650 *et seq*. (*See* Compl. ¶¶ 23-65.)

Defendants initially retained attorney Daniel Mevorach ("Mr. Mevorach") to represent them in this action. On March 7, 2012, Mr. Mevorach filed an answer to the Complaint on behalf of Defendants, denying Plaintiff's allegations of unpaid wages. (Dkt. Entry No. 9.) Mr. Mevorach subsequently filed an amended answer on March 16, 2012. (Dkt. Entry No. 12.) On April 5, 2012, Mr. Mevorach appeared for an initial conference before the Magistrate Judge, who set a discovery plan and scheduled another conference for June 1, 2012 to discuss settlement. Two days before the settlement conference, Mr. Mevorach received a letter from Defendants terminating his representation. (*See* Decl. of Daniel P. Mevorach in Supp. of Mot. to Withdraw, dated May 30, 2012 ("Mevorach Decl.") ¶ 5, Dkt. Entry No. 15-2.) Mr. Mevorach thereupon filed a motion to withdraw as Defendants' counsel. (Dkt. Entry No. 15.) In a declaration he submitted in connection with the motion, Mr. Mevorach attested that he had met with Defendants three times to discuss this action. (Mevorach Decl. ¶ 4.) However, a "complete breakdown in the attorney-client relationship" occurred when he attempted to schedule a deposition of Young Blooming that had been noticed by Plaintiff's counsel. (*Id.*) At that point, Defendants cut off contact with Mr. Mevorach and refused to respond to his calls or letters. (*Id.* ¶ 5.) In addition, it

was clear to Mr. Mevorach that Defendants were unwilling to accept his advice concerning legal strategy and settlement. (*Id.* ¶ 6.)

The Magistrate Judge twice postponed a conference to address Mr. Mevorach's motion in order to ensure that Defendants had notice of the motion and an opportunity to object. When Defendants failed to appear or otherwise object at the rescheduled motion hearing on July 13, 2012, the Magistrate Judge granted the motion to withdraw. In an accompanying Order, the Magistrate Judge explicitly warned Defendants that they were required to participate in this action, and to personally appear at all scheduled conferences to the extent they decided not to retain another attorney. (Dkt. Entry No. 20.) In addition, the Order directed Young Blooming to retain counsel or else default judgment would be entered against it, as corporations may not represent themselves in federal court. (*Id.*)

Defendants did not retain another attorney and failed to appear at the next scheduled conference on September 14, 2012. At that conference, Plaintiff's counsel informed the Magistrate Judge that Defendants had not responded to her discovery requests or any of her attempts to contact them. Defendants were served by mail with the minutes of the conference and another copy of Plaintiff's discovery requests. By December 4, 2012, Defendants still had not made any attempt to contact Plaintiff's counsel or the Court, while Young Blooming had not retained an attorney in accordance with the Magistrate Judge's prior Order. Accordingly, the Magistrate Judge issued a Report and Recommendation recommending that the Court strike Young Blooming's answer and enter default against it. (Dkt. Entry No. 25.) In addition, the Magistrate Judge imposed a monetary sanction of $100 against each Individual Defendant, and directed them to submit a status report explaining their failure to appear and defend this action. (Dkt. Entry No. 26.) Defendants again were served by mail with copies of the Report and

Recommendation and the sanctions Order. Nevertheless, Defendants neither paid the monetary fine nor submitted a status report to the Court by the deadline set by the Magistrate Judge.

On January 25, 2013, the Court adopted the Magistrate Judge's Report and Recommendation striking Young Blooming's answer. Noting Defendants' repeated failure to appear in this action and to comply with the Magistrate Judge's orders, the Court additionally directed the Clerk of the Court to enter default against Young Blooming as well as the Individual Defendants. Again, Defendants were served by mail and proof of such service was filed on the docket. (Dkt. Entry No. 29.) After default was entered, Plaintiff moved for an award of damages on her claims of unpaid wages. (Dkt. Entry No. 31.) Pursuant to the fee-shifting provisions of the FLSA and the NYLL, she additionally sought recovery of attorney's fees and costs. (Dkt. Entry No. 36.) The Court referred Plaintiff's motions to the Magistrate Judge for an inquest as to damages and the preparation of a Report and Recommendation. By Scheduling Order dated June 11, 2013, the Magistrate Judge directed Plaintiff to supplement her motions with a more detailed explanation of her damages calculations. (Dkt. Entry No. 40.) Plaintiff submitted her supplemental materials on July 2, 2013, serving Defendants by mail and filing proof of such service on the docket. (Dkt. Entry No. 43.) Although given an opportunity to respond, Defendants failed to do so.

On July 8, 2013, and again on July 17, Plaintiff's counsel informed the Court that several of her mailings to Defendants had been returned undelivered by the U.S. Postal Service, certain of which had been marked "Refused." (*See* Dkt. Entry Nos. 44-46.) Thereafter, Plaintiff's counsel undertook extraordinary effort to serve Defendants, traveling by train and taxi to attempt personal service at a residence in Yonkers, New York registered to Mr. Cha and his wife Ms. Cha. (Dkt. Entry No. 47.) A postcard at the residence was addressed to Mr. Cha. (*Id.*) After

ringing the doorbell twice and receiving no response, Plaintiff's counsel left a parcel of documents at the door that included, *inter alia*, copies of the Clerk's Entry of Default, Plaintiff's motions for damages and attorney's fees, and the Magistrate Judge's June 11, 2013 Scheduling Order directing Defendants to respond. (*Id.*) Plaintiff's counsel then traveled to Poughkeepsie, New York, where she personally served Yu Sun Cha at a nail salon she managed that allegedly was operated by Young Blooming under the name Sage Nail & Spa. (*Id.*)

On March 11, 2014, the Magistrate Judge issued a Report and Recommendation recommending that the Court direct the entry of default judgment awarding Plaintiff $111,991.11 in damages. (Dkt. Entry No. 49.) Defendants were served by mail with a copy of the Report and Recommendation, but did not file objections with the Court or respond in any other manner. On March 31, 2014, the Court adopted the Report and Recommendation in its entirety, awarding Plaintiff the recommended damages and directing the Clerk of the Court to enter judgment against Defendants. Accordingly, a Default Judgment was entered on March 31, 2014. (Dkt. Entry No. 50.) Thereafter, on April 7, 2014, a Corrected Default Judgment was entered by the Clerk of the Court, awarding damages to Plaintiff in the amount of $112,031.15. (Dkt. Entry No. 52.) Exactly one year later, on April 7, 2015, Defendants, through counsel, filed the instant motion to vacate the Default Judgment. (Dkt. Entry No. 54.)

## DISCUSSION

### I. Rules 55(c) and 60(b)(1)

Default judgments "are generally disfavored." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). As such, "all doubts must be resolved in favor of the party seeking relief from the judgment in order to ensure that to the extent possible, disputes are resolved on their merits." *New York v. Green,* 420 F.3d 99, 104 (2d Cir.2005) (citing *Powerserve Int'l, Inc. v.*

*Lavi*, 239 F.3d 508, 514 (2d Cir.2001)). Nevertheless, a motion to vacate a default judgment "is addressed to the sound discretion of the district court and [the Second Circuit] will not reverse the denial of such a motion except for abuse of discretion." *Gesualdi v. Quadrozzi Equip. Leasing Corp.*, 2015 WL 6642681, at *1 (2d Cir. Nov. 2, 2015) (quoting *State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 166 (2d Cir. 2004)).

Rule 55(c) of the Federal Rules of Civil Procedure provides that "[t]he court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). Here, because Defendants move to vacate a final default judgment and not just an entry of default, Rule 60(b) governs the instant motion. *See Fairfield Fin. Mortg. Grp. Inc. v. Luca*, 2011 WL 3625589, at *3 (E.D.N.Y. Aug. 16, 2011) ("Here, where there has been not only an entry of default, but also a default judgment, Rule 60(b) provides the governing standard."); *Yurkov-Shkolnik v. Allstate Life Ins. Co. of New York*, 2008 WL 4093490, at *4 (S.D.N.Y. Sept. 2, 2008); *RCI HV, Inc. v. Transtec (RC) Inc.*, 2004 WL 1197246, at *10 (S.D.N.Y. May 28, 2004). Under Rule 60(b)(1), a court may set aside a final default judgment for "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1); *see also* Fed. R. Civ. P. 55(c). Notably, a motion pursuant to Rule 60(b)(1) must be made "within a reasonable time," but "no more than a year after the entry of the judgment." Fed. R. Civ. P. 60(c)(1). "The one-year limitation period for Rule 60(b) motions is absolute." *Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of Contemporary Dance, Inc.*, 466 F.3d 97, 100 (2d Cir. 2006) (quoting *Warren v. Garvin*, 219 F.3d 111, 114 (2d Cir. 2000)) (internal quotation marks omitted).

In their papers, the parties do not address the timing requirement of Rule 60(b)(1). Nevertheless, because that requirement goes to the Court's authority to vacate the Default

6

Judgment, the Court must consider whether it has been satisfied. The Court concludes that it has not been satisfied and that Defendants' motion is untimely. Default Judgment was entered on March 31, 2014. (Dkt. Entry No. 50.) On April 7, 2014, the Clerk of the Court entered a "Corrected Default Judgment." (Dkt. Entry No. 52.) The Clerk evidently did so to correct a typographical error in the original Default Judgment. Aside from correcting that error, and recalculating the assessed pre-judgment interest, the Corrected Default Judgment did not alter the original Default Judgment in any respect. It did not, for example, alter the Court's finding of Defendants' liability or even the amount of damages awarded under the FLSA and NYLL. Therefore, this action was resolved to a final judgment upon the entry of the original Default Judgment on March 31, 2014. It follows that Defendants had until March 31, 2015 to file a motion pursuant to Rule 60(b)(1) to vacate the Default Judgment. However, Plaintiffs did not file the instant motion until April 7, 2015, rendering it untimely under the one-year limitation period for such motions imposed by Rule 60(c)(1). (*See* Dkt. Entry No. 54.)

The Court's conclusion that the limitation period ran from the date of the original Default Judgment, and not the date of the Corrected Default Judgment, is consist with how courts apply statutory filing deadlines specifically in the context of Rule 60(b), as well as in other analogous contexts. For example, in *GLeS, Inc. v. MK Real Estate Developer & Trade Co.*, 530 F. App'x 153, 153-54 (3rd Cir. 2013), a final judgment against certain defendants was entered on May 6, 2011. On June 21, 2011, the magistrate judge entered an amended judgment to account for attorney's fees subsequently awarded. *Id.* at 154. Almost one year later, on June 20, 2012, the defendants filed a motion pursuant to Rule 60(b) to vacate the default judgment. *Id.* The Third Circuit held that the motion was untimely under Rule 60(c)(1) because the defendants were challenging the finding of liability that was final as of the entry of the initial judgment on May 6,

2011. *Id.* The court relied on *Jones v. Swanson*, 512 F.3d 1045, 1049 (8th Cir. 2008), where the Eighth Circuit similarly held that the one-year limitation period for a Rule 60(b) motion began to run from the entry of an initial judgment, and not an amended judgment that "left in place the jury's finding of tort liability and only altered the award of damages."

The Second Circuit also has construed the one-year limitation period strictly, holding that it runs from the date of judgment in the district court notwithstanding any appeal that "ma[kes] no substantive change in [the parties'] legal position." *See Martha Graham Sch.*, 466 F.3d at 101. Even in the habeas corpus context, where prisoners' freedom is at stake, courts have held that the one-year limitation period imposed by Congress to file a petition pursuant to 28 U.S.C. § 2254 must be applied strictly. As such, the filing of a corrected or amended judgment that does not disturb the underlying validity of the judgment the petitioner seeks to challenge will not toll or reset the limitation period. *See, e.g., Deese v. Beck*, 2007 WL 3334209, at *2 (W.D. N. Car. Nov. 5, 2007) ("[T]he fact that an error was discovered by the Department of Correction in Petitioner's kidnapping sentence and corrected by an amended judgment on September 9, 2003 does not toll . . . or restart the clock.")

Here, the parties' legal positions with regard to this action were determined with finality upon the entry of the original Default Judgment on March 31, 2014. The fact that the Clerk of the Court made a typographical error, которую it fixed through a Corrected Default Judgment that did not alter the parties' legal positions in any respect, did not excuse Defendants from the absolute requirement to file any motion pursuant to Rule 60(b)(1) by no later than March 31, 2015.[3] Defendants did not do so, and the Court consequently is without power to grant a Rule

---

[3] Although one year from the entry of judgment is the outer limit for making a motion under Rule 60(b)(1), a court is not precluded from finding that a motion filed within that period nevertheless was not made "within a reasonable time." *See* Fed. R. Civ. P. 60(c)(1). Here, even if the Court concluded that the one-year limitation period ran from the date of the Corrected Default Judgment, the Court still would find Defendants' Rule 60(b)(1) motion untimely in

8

60(b)(1) motion. Accordingly, the portion of Defendants' motion made pursuant to Rule 60(b)(1) is denied.[4]

Even assuming that the Court had the power to vacate the Default Judgment pursuant to Rule 60(b)(1), which it does not, such relief would not be warranted in light of Defendants' willful disregard of this action and Court orders. As the Second Circuit has made clear, where a defendant seeks to vacate an entry of default for "good cause" pursuant to Rule 55(c), or to vacate a final default judgment for "excusable neglect" under Rule 60(b)(1), the court must consider whether the defendant's default was willful. *See State St. Bank*, 374 F.3d at 166-67 (citing *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998)); *see also Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 171 (2d Cir. 2001). A finding of willfulness requires "something more than mere negligence, such as egregious or deliberate conduct, although the degree of negligence in precipitating a default is a relevant factor to be considered." *Green*, 420 F.3d at 108 (internal quotation marks and citation omitted).

Here, there is no question that Defendants' default was willful. They initially retained Mr. Mevorach to represent them in this action, but reconsidered his representation after he advised them to make a $15,000 settlement offer.[5] (*See* Decl. of Gil Soo Cha ("Mr. Cha Decl.")

---

light of their willful disregard of this action. *See, e.g. Fairfield Fin. Mortg.*, 2011 WL 3625589, at *3-4 (Rule 60(b) motion filed "barely within the one-year time limit" was untimely because the defaulting defendants offered no explanation for their delay) (citing *Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne de Navigation*, 605 F.2d 648, 656 (2d Cir. 1979)).

[4] Defendants' motion explicitly is made pursuant to Rule 60(b)(1). (*See* Dkt. Entry No. 54.) The Court notes that even if it were to construe the motion as being made under Rule 60(b)(6), which is not subject to a mandatory one-year limitation period, the motion still would fail. Defendants do not allege any exceptional circumstances that would warrant the exercise of this Court's equitable powers. *See Yurkov-Shkolnik*, 2008 WL 4093490, at *5; *Velez v. Vassallo*, 203 F. Supp. 2d 312, 333-34 (S.D.N.Y. 2002).

[5] Without identifying him by name, Mr. and Ms. Cha assert that they initially retained a "first" attorney, who told them that he would get this case dismissed. (Mr. Cha Decl. ¶ 21; Ms. Cha Decl. ¶ 9.) However, that attorney subsequently referred them to a "second attorney," who recommended settlement. (Mr. Cha Decl. ¶ 23; Ms. Cha Decl. ¶ 10.) Although it is left unclear by Defendants' vague allegations, the record suggests that Mr. Mevorach was the second attorney. Ms. Cha alleges that she personally terminated the second attorney, while Mr. Mevorach's

¶¶ 20-24, Dkt. Entry No. 54-2; *see also* Decl. of Mercedes Cha ("Ms. Cha Decl.") ¶¶ 6-12, Dkt. Entry No. 54-3.) According to Mr. Cha, he disagreed with that advice because he thought he had always paid Plaintiff what she was owed. (Mr. Cha Decl. ¶ 24.) Accordingly, Defendants made a strategic decision to cut off contact with Mr. Mevorach and to terminate him as counsel because they disagreed with his legal advice. (*Id.* ¶ 24; Ms. Cha Decl. ¶ 12; Mevorach Decl. ¶¶ 5-6.)

At that point, Defendants knew that this action was pending against them and that it required their attention. While understandable that they would not grasp the legal complexities of litigating wage and hour claims in federal court, it was not excusable for them simply to ignore this case altogether. *See King v. Galluzzo Equip. & Excavating Inc.*, 223 F.R.D. 94, 97-98 (E.D.N.Y. 2004) ("A party's decision to ignore the dangers attendant to litigation cannot serve to excuse his default.") (quoting *Original Appalachian Artworks, Inc. v. Yuil Int'l Trading Corp.*, 105 F.R.D. 113, 116 (S.D.N.Y. 1985)); *see also Labarbera v. Interstate Payroll Co., Inc.*, 2009 WL 1564381, at *2 (E.D.N.Y. June 2, 2009) (even where a defendant expected case to be settled out of court, willful choice to ignore litigation did not constitute "good cause").

Yet, according to Defendants' own admissions, ignore this case is precisely what they did. Mr. Cha, whose first language is Korean, alleges that he consulted a Certified Public Accountant fluent in Korean who advised him that he could wait until the Court contacted him before taking further action. (Mr. Cha Decl. ¶ 29.) Nevertheless, Defendants did not appear before the Court as required or make any other effort to contact the Court, despite the fact that Plaintiff's counsel and the Court repeatedly served them with documents concerning this litigation. While Defendants state in conclusory fashion that they never received any documents

---

declaration states that Ms. Cha contacted him to terminate his representation. (Ms. Cha Decl. ¶ 12; Mevorach Decl. ¶ 5.)

from the Court, (*see* Ms. Cha Decl. ¶ 17), they do not provide any explanation as to why that would be the case. *Cf. Burda Media, Inc. v. Viertel*, 417 F.3d 292, 299 (2d Cir. 2005) ("[W]here the defaulting defendant had actual notice of the original proceeding but delayed in bringing the motion, the defendant bears the burden of proof to establish that the purported service did not occur.") In fact, Plaintiff's counsel went to the trouble of hand delivering Court documents to Mr. and Ms. Cha's home address, but they still made no effort whatsoever to participate in this action after terminating Mr. Mevorach.

Moreover, Ms. Cha admits that she received numerous mailings from Plaintiff's counsel. (Ms. Cha Decl. ¶ 13.) However, for two principal reasons, Ms. Cha "did not pay much attention" to those mailings and declined to tell Mr. Cha about them. (*Id.*) First, she is of Hispanic background and allegedly has "difficulties with English" that frustrated her understanding of the communications from Plaintiff's counsel. (*Id.*) Mr. Cha similarly alleges that a language barrier prevented him from understanding Mr. Mevorach's advice and the full legal ramifications of this action. (Mr. Cha Decl. ¶¶ 24-27.) Second, Ms. Cha alleges that she did not want to place any stress on Mr. Cha out of concern for his health, as he was diagnosed with stomach cancer in 2008, underwent surgery in Korea thereafter, and continues to travel to Korea periodically to receive treatment. (Ms. Cha Decl. ¶¶ 2, 8, 12-13, 16; Mr. Cha Decl. ¶¶ 16-17, 30.) Ms. Cha also has a history of medical issues, having been diagnosed with breast cancer several years before this action was commenced. (Ms. Cha Decl. ¶ 15.) In addition, on December 29, 2012, Mr. and Ms. Cha allegedly were involved in a serious car accident that caused injuries requiring extensive medical treatment, which further prevented them from participating in this action. (*Id.* ¶ 14; Mr. Cha Decl. ¶ 31.)

While those circumstances no doubt were trying, the Court could have accommodated

Defendants if they had made any effort to participate in this litigation or even contact the Court after terminating Mr. Mevorach. The Court can do little to accommodate Defendants now, long after the entry of the Default Judgment, as the above circumstances do not constitute excusable neglect. First, while language limitations may bear on whether default was willful, *see, e.g., United States v. U.S. Currency in the Amount of $41,807*, 795 F. Supp. 540, 543-44 (E.D.N.Y. 1992), any language limitations faced by Mr. and Ms. Cha were not so serious as to prevent them from: (1) incorporating a business and running at least two nail salons, which they operated using a "combination of Korean, Spanish, and English languages" (*see* Reply Aff. of Hong K. Jung in Supp. of Defs.' Mot. to Vacate, dated May 13, 2015 ("Jung Reply Aff.") ¶ 6, Dkt. Entry No. 57); (2) retaining Mr. Mevorach when they first learned of this action and meeting with him several times to discuss it; and (3) making a strategic decision to terminate Mr. Mevorach when they did not agree with his advice to make a settlement offer.[6] These facts portray Defendants as more than capable of understanding that this action required their attention and that they could not simply ignore it. *See Nuova Fagnu's S.P.A. v. Ital-Moda Boutique*, 1985 WL 2519, at *2 (S.D.N.Y. Sept. 11, 1985) (lack of English fluency not an excuse for default where defendant's ability to run a business in the United States and his initial retention of an attorney demonstrated "a person sufficiently aware of the importance of legal papers served upon him.")

Second, having retained an attorney in the first place, Defendants do not sufficiently explain why their pre-existing medical issues prevented them from retaining another attorney or, at a minimum, contacting opposing counsel or the Court to explain their situation. In fact, the only explanation offered by Defendants is that Ms. Cha did not inform Mr. Cha of mailings they

---

[6] Notably, after terminating Mr. Mevorach's representation, Defendants' unwillingness or inability to retain new counsel "does not serve as an excuse for default." *King*, 223 F.R.D. at 98. "[W]here a party is notified that he is in default and he apparently makes no effort to appear pro se or to explain his situation to the opposing party and the court, such neglect is inexcusable." *Id.* (quoting *Original Appalachian Artworks*, 105 F.R.D. at 116.)

received concerning this litigation because she did not want to worry him. (Ms. Cha Decl. ¶ 16.) Such conduct is both willful and inexcusable because the record reflects that Mr. and Ms. Cha were perfectly capable of litigating when it was in their interest, as the following facts demonstrate.

On December 29, 2012, Mr. and Ms. Cha were involved in a car accident and allegedly suffered injuries that required extensive medical treatment. (*Id.* ¶ 14; Mr. Cha Decl. ¶ 31.) At that point, roughly seven months had elapsed since Defendants terminated Mr. Mevorach's representation, during which time Defendants failed to appear at a September 14, 2012 conference and did not comply with any of the Magistrate Judge's orders. Mr. and Ms. Cha's later involvement in a car accident does not excuse any of that willful behavior. Moreover, on January 21, 2014, more than two months before the Default Judgment was entered in this action, Mr. and Ms. Cha brought a personal injury lawsuit in New York state court in connection with their 2012 car accident. (*See* Ex. D to the Jasne Aff.) They offer no valid explanation why they were able to pursue litigation on their own behalf without so much as contacting opposing counsel or the Court in connection with this case. Defendants' counsel merely argues that being a plaintiff in a personal injury action requires less personal involvement as a litigant than being a defendant in a wage and hour lawsuit. (*See* Jung Reply Aff. ¶¶ 24-26.) While that may be true, it is not an excuse for Defendants to pick and choose which legal proceedings to participate in and which to ignore.

Where, as here, default was willful, it should not be set aside. *Schwarz v. Thinkstrategy Cap. Mgmt. LLC*, 2016 WL 29626, at *4 (S.D.N.Y. Jan. 4, 2016) (citing *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 507 (2d Cir. 1991)). Accordingly, even if the Court had the power to

consider Defendants' untimely motion, it would deny those portions made pursuant to Rules 55(c) and 60(b)(1).

## II. Rule 60(b)(4)

Defendants also move to vacate the Default Judgment pursuant to Rule 60(b)(4) of the Federal Rules of Civil Procedure, which permits a court to set aside a final judgment that is void. Fed. R. Civ. P. 60(b)(4). Notably, where a judgment is shown to be void, "it is a *per se* abuse of discretion for a district court to deny a movant's motion to vacate the judgment under Rule 60(b)(4)." *Burda Media,* 417 F.3d at 298 (2d Cir. 2005) (quoting *State St. Bank*, 374 F.3d at 178.) While a motion pursuant to Rule 60(b)(4) still must be made "within a reasonable time," it is not subject to the mandatory one-year limitation period applicable to motions under Rule 60(b)(1). *See* Fed. R. Civ. P. 60(c)(1).

Questions of timeliness aside, Defendants' Rule 60(b)(4) motion must be denied because it fails to establish that the Default Judgment is void. As the sole basis for the motion, Defendants contend that the Court lacked federal subject matter jurisdiction over this action because they do not fit within the scope of coverage of the FLSA. (Jung Aff. ¶¶ 56-70.) In that regard, the Magistrate Judge determined in her March 11, 2014 Report and Recommendation that Defendants were "employers" subject to the FLSA's wage requirements because they were engaged in an enterprise with annual sales in excess of $500,000, which had employees handling, selling, or otherwise working on goods or materials moved in interstate commerce. (Dkt. Entry No. 49, at 7-8.) In connection with the instant motion, Defendants submit federal tax returns to show that Young Blooming's sales were below the $500,000 threshold required for "enterprise coverage" under the FLSA. (*See* Ex. E to the Junf Aff.)

Nevertheless, that showing is unavailing for purposes of Defendants' argument that the Court lacked subject matter jurisdiction over this action. As other courts in this Circuit have recognized, "the question of enterprise status is an issue that goes to the merits of a plaintiff's claims rather than subject matter jurisdiction." *Spain v. Kinder Stuff 2010 LLC*, 2015 WL 5772190, at *3 (E.D.N.Y. Sept. 29, 2015); *see also Suggs v. Crosslands Transp., Inc.*, 2015 WL 1443221, at *3 n.2 (E.D.N.Y. Mar. 27, 2015) ("[B]ecause the question of enterprise status is an issue that goes to the merits of a plaintiff's claims rather than subject matter jurisdiction, the question of [d]efendants' status as an enterprise under the FLSA engaged in commerce, is deemed proved by [d]efendants' default.") (quoting *Velez*, 203 F. Supp. 2d at 333) (internal quotations marks omitted). Accordingly, in circumstances virtually identical to those here, courts have rejected Rule 60(b)(4) motions asserting that the movant was not subject to "enterprise coverage" under the FLSA. *See, e.g., Velez*, 203 F. Supp. 2d at 327-333. To be sure, Defendants' Rule 60(b)(4) motion suggests a possible defense that could have been raised by Defendants had they not abandoned this action.[7] But that motion does not raise any issue of subject matter jurisdiction. Accordingly, the portion of Defendants' motion made pursuant to Rule 60(b)(4) is denied.

---

[7] Whether the defendant has a meritorious defense is an appropriate consideration for a court in deciding whether to grant a motion pursuant to Rule 60(b). *State St. Bank*, 374 F.3d at 167. Here, the Court need not address at length the merits of Defendants' proposed defenses because the instant motion is untimely under Rule 60(b)(1), and fails as a matter of law under Rule 60(b)(4).

## CONCLUSION

For the foregoing reasons, Defendants' motion to vacate the Default Judgment is denied in its entirety.

SO ORDERED.

Dated: Brooklyn, New York
       March 30, 2016

_____/s/_____
DORA L. IRIZARRY
United States District Judge